## CALLAS v. INDEPENDENT TAXI OWNERS' ASS'N, Inc., et al.
### No. 5777.

Court of Appeals of the District of Columbia.
Argued May 8, 1933.
Decided May 29, 1933.

Rehearing Denied June 23, 1933.

J. U. Gardiner, of Washington, D. C., for appellant.

Alfred D. Smith, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice. This is an appeal from a judgment of the Supreme Court of the District of Columbia in a negligence case growing out of a traffic accident.

The plaintiff is a fruit vender, injured while tending his pushcart in Fourteenth street near the Bureau of Engraving; the defendants are the Independent Taxi Owners' Association, Incorporated, and one Schou, driver of the cab involved in the accident, appellees here.

The company is sued as being "engaged with its members and associates under the trade name of Diamond Cab Company in the business of maintaining and operating and assisting to maintain and operate" a fleet of taxicabs in the city of Washington.

Schou is sued as a member, associate, agent, servant, or employee of the said corporation, operating the cab in question at the time of the accident with consent of the company and in furtherance of its business.

The case presents an aspect of the familiar but elusive problem of who is responsi-

ble for injuries caused by a cab performing under the colors and name of one of the so-called cab companies operating in Washington.

It is admitted here that the accident occurred by collision between the cab and the plaintiff or his pushcart; that the plaintiff was injured; that the cab bore the name of the Diamond Cab Company; was one of its fleet of cabs; and that Schou drove it at the time.

But it is denied that any negligence occurred on the part of the cab, or that the company was, or legally could be, responsible if any negligence had occurred.

The court directed a verdict for the company at the close of plaintiff's evidence, and the case proceeding against the driver alone, the jury returned a verdict in his favor; the court having refused to permit the attorney for the plaintiff to argue the case to the jury because he had testified as a witness in rebuttal.

The eight assignments of error present three questions—as to the correctness of the directed verdict; as to certain rulings on the evidence; and as to the refusal to permit plaintiff's attorney to argue the case.

■ The learned judge was of opinion throughout the trial, as he several times stated, that because a witness testified that the company was not engaged in the cab business, and because the accident occurred to a pedestrian and not to a passenger, the company could not be liable by way of estoppel or otherwise.

In pursuance of this view he declined to permit the plaintiff to fully develop in evidence the whole relationship in which the corporation stood to its so-called members, and sustained objections to questions as to how an applicant becomes a member of the association, how much he pays for entrance, by whom the association is represented before the Public Service Commission, and how extensive the advertising of the company is.

These questions were all held to be immaterial, but, in view of the uncertain nature of this relationship and the changing character of this corporation, as indicated by the evidence and the arguments of counsel, we are of opinion that the questions were material and should have been admitted.

For, by the original charter of the company, as here in evidence, the State of Delaware in January, 1926, undertook to authorize the company to engage in the taxicab business "in any part of the world"; in April, 1927, this accident occurred; in September, 1927, the company obtained registry in the Patent Office of its trade-name of Diamond Cab Company, its colors, and its emblems: in January, 1928, an amended charter was obtained, which was not offered in evidence, but which is said by the president of the company to expressly forbid its ownership of cabs.

The company now contends that it never accepted its original charter by which it was authorized to engage in the taxicab business and by virtue of which it obtained registry of its trade-name of Diamond Cab Company; yet admits that it is now receiving revenues amounting to thousands of dollars per month by licensing cab drivers to use that trade-name.

Such a situation, if developed by evidence, might well require the court to disregard the corporate entity and hold the individuals behind the corporation and receiving this revenue to be liable to persons negligently injured by these cabs, whether passengers or pedestrians.

■■ "If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 F. 247, 255; Bank v. Trebein Co., 59 Ohio St. 316, 52 N. E. 834; Luckenbach S. S. Co. v. W. R. Grace & Co. (C. C. A.) 267 F. 676, 681; Lehigh Valley R. Co. v. Dupont (C. C. A.) 128 F. 840; In re Muncie Pulp Co. (C. C. A. 2d) 139 F. 546; Foard Co. v. State of Maryland (C. C. A.) 219 F. 827; Morewatz, Private Corporations, § 227; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (C. C. A.) 49 F. (2d) 146; Boatright v. Steinite Radio Corp. (C. C. A.) 46 F.(2d) 388; McCaskill Co. v. U. S., 216 U. S. 504, 514, 30 S. Ct. 386, 54 L. Ed. 590.

This action is based in part upon a theory of joint adventure between the corporation and the driver, and the declaration charges that the company was operating the cab by Schou as a member, associate, agent, or servant of the company. The separate plea of each defendant denies that Schou was acting as such agent or servant, but does not deny that he was acting as an associate or member of the corporation.

The president of the corporation, called by the plaintiff as a witness of necessity, on cross-examination testified that the company did not own any cabs, had never owned one, and that Schou had never been a member of the association.

Thereafter, upon argument of its motion for a directed verdict, the company contended that there was no evidence that Schou was a member, servant, or agent of the association, or to show any connection whatever between Schou and the company at the time of the accident.

But the charter of the company was in evidence showing its authority to operate taxicabs; the car was operating as a taxicab at the time of the accident, bearing the peculiar colors and trade-name of the defendant company; and consequently was legally presumed to be in the custody and on the business of the person whose name it bore.

Whether the effect of this presumption was overcome by the testimony of the president of the company that it did not own a cab, and his intimations that it was not in the cab business was a question of fact for the jury, and consequently its decision as a question of law by the court was error.

"So far as the liability of the defendant was concerned, the plaintiffs' case rested wholly upon a presumption. There was no direct evidence as to who was the owner of the truck that inflicted the injury, nor as to who was in charge of it when the collision occurred. There was evidence, however, that the truck bore the name of the defendant company. This was sufficient to establish, not only a prima facies that the defendants were the owners of the truck, but also that it was then in charge of their servant or employee. This was presumptive evidence, and, as has frequently been ruled, was quite sufficient to carry the case to the jury." Holzheimer et ux. v. Lit Brothers, 262 Pa. 152, 105 A. 73, 74; Joyce v. Copel, 8 Carrington & Payne 785; Edgeworth v. Wood, 58 N. J. Law, 467, 33 A. 940; Vonderhorst B. Co. v. Amrhine, 98 Md. 406, 56 A. 833; Geiselman v. Schmidt, 106 Md. 580, 68 A. 202; Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361; Shaughnessy v. Director General of Railroads, 274 Pa. 415, 118 A. 390, 23 A. L. R. 1211.

In view of the subsequent verdict for the defendant Schou on the ultimate question of negligence, these rulings on the evidence and the motion might have been harmless error, were it not for another ruling upon a later question which intervened.

Near the end of the case counsel for the plaintiff went upon the witness stand in rebuttal to contradict statements made in the deposition of a policeman. The evidence given by the policeman was a serious blow to the plaintiff's case, and, as counsel was alone in a position to contradict his statements, it was necessary he should testify.

The deposition had been on file long enough before the trial to put counsel on notice that he must testify, and he stated that he had anticipated this necessity, whereupon he should have associated other counsel with himself, or, better still, should have retired as counsel, but he did neither, and, appearing alone for the plaintiff in the case, testified to a circumstance of vital importance to his client's interests.

The trial judge was of opinion that his action in this respect was so grossly improper that he refused to permit him to argue the case to the jury, and so stated in reprimanding counsel in the presence of the jury.

The court then offered to withdraw a juror and continue the case, which was declined by counsel.

After argument to the jury for the defendant, the court offered to permit counsel for the plaintiff to bring in other counsel to argue his case, which offer was also declined, and the case was submitted to the jury without argument for the plaintiff.

We agree that, in view of his knowledge of the necessity for his testifying, counsel's failure to withdraw was a disregard of professional propriety which deserved the discouragement of the court.

And the remarks of the learned judge appearing in the record were sufficiently discouraging.

But, if any further punishment was deemed necessary, it should have been made to fall upon the counsel after the trial, and not upon the client, and should not have deprived the client of any argument in support of his case. French v. Hall, 119 U. S. 155, 7 S. Ct. 170, 30 L. Ed. 375.

For all the considerations above stated we think the judgment should be reversed, and the cause remanded for a new trial in accordance with this opinion, when all charters of the company should be produced and wide latitude given in developing the relationship of the company to its members and the drivers of the cabs.

In Rhone v. Try Me Cab Co., 62 App. D. C. 201, 65 F.(2d) 834, handed down today, we had occasion to remark that the

present system of licensing and controlling taxicabs in the city of Washington is far from satisfactory, and this case emphasizes the correctness of that statement.

If a corporation chartered as a cab company may bring under its general control a fleet of a thousand taxicabs and hold itself out as a public service corporation engaged in their operation, and at the same time evade responsibility by showing that it is merely a beneficial association providing a centralized administrative bureau through co-operative effort, it is apparent that public authority should insure to the public some other protection against this growing menace.

Recent cases before this court impel us in the discharge of our duty to call attention to this situation.

Reversed and remanded.