## MARCHETTI et al. v. OLYOWSKI.
### No. 10306.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 4, 1950.

Decided March 6, 1950.

Messrs. Joseph D. Bulman and Sidney M. Goldstein, Washington, D. C., for appellants.

Mr. David W. Louisell, Washington, D. C., with whom Messrs. Samuel Spencer and Charles W. Proctor, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PROCTOR and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Mrs. Annie E. Olyowski was injured on February 16, 1946, when the cab in which she was a passenger collided with a parked truck on a highway in northern Virginia. A jury in the United States District Court for the District of Columbia awarded damages to Mrs. Olyowski against Anthony J. Nolan, who was operating the cab at the time of the accident, against Philip Marchetti, in whose name it was registered as a taxicab by the Public Utilities Commission of the District of Columbia and in whose name public liability insurance was carried, as evidenced by a sticker on the windshield, and against American Cab Association, whose trade name and color scheme appeared on the cab. Marchetti and American appeal.

In order to ascertain whether either appellant was legally liable for Nolan's negligence, it is necessary to examine the relations between Nolan, Marchetti and American Cab Association as disclosed by the evidence.

Mrs. Olyowski became acquainted with Nolan on February 13, 1946, when she hailed him at 14th and K Streets, N. W. At that time he was operating a Diamond cab. She engaged him to drive her to Charlotte, North Carolina, and return, with the understanding that the exact time of departure would be determined in a day or two. They agreed upon a fare of $150, of which $50 was to be paid when the trip began and the remainder when it was completed.

On February 14, the day after he had made the contract with Mrs. Olyowski, Nolan purchased from Marchetti a taxicab which bore the color scheme and trade name of American Cab Association, of which Marchetti was a member and Nolan was not. Upon receipt of the purchase price, Marchetti delivered the car to Nolan, who immediately had it licensed (as an automobile but not as a taxicab) in his own name. Neither he nor Marchetti notified the American Cab Association that the vehicle bearing its mark and color design had been sold and delivered to Nolan. Neither notified the Public Utilities Commission of the transfer and Nolan did not make application to the Commission to have the car registered in his name as a taxicab nor did he seek the Commission's authorization to operate it under the trade name of American Cab Association. Consequently, when Nolan collected $50 from Mrs. Olyowski and set out on the journey to Charlotte at 2:00 a. m. on February 16, his cab bore the insignia and colors of American Cab Association without its knowledge or consent, and was licensed by the Commission and insured as a taxicab, not in his name, but in the name of Marchetti. Just south of Alexandria, Virginia, Nolan picked up a soldier. The hitchhiker had a bottle of whiskey which he shared with Nolan. Soon after, the accident occurred.

The proof showed that under the rules of the Public Utilities Commission the transfer of the title to a taxicab must be reported to the Commission. A transferee cannot legally operate the vehicle as a taxicab until he has applied for and obtained his own permit and the required public liability insurance. The transferee of the taxicab cannot legally operate it under the trade name of a cab association until he has presented to the Commission the association's assent, and has received official authority to operate with the chosen colors and insignia.

The evidence showed that American Cab Association does not own or operate taxicabs, does not operate a garage, does not advertise, and does not furnish any telephone call service. The extent of its activity seems to be to permit its members to use its trade name and its color scheme and to obtain public liability insurance, the effectiveness of which is indicated by a windshield sticker supplied to the members by the Association.

With the evidence as we have summarized it, the district judge submitted to the jury the question of Nolan's negligence and charged the jury that, if it found against Nolan, it must also find against Marchetti and American Cab Association.[1]

1. This portion of the judge's charge to the jury was as follows:
"* * * the defendant Nolan was driving in a cab with the insignia of the American Cab Association upon it. The cab association claims that at the time Nolan was not a member of the association and, therefore, it is not responsible but, under law, it is responsible where they permitted or the former owner, Marchetti, permitted this cab to be operated by Nolan but turned it over to Nolan with this insignia upon it, then the cab company is liable and Marchetti is liable for having turned it over to him with this insignia upon it.

"When a person gets in a cab, as a passenger, for hire, it is not incumbent upon that person to investigate whether that cab or the person driving it is a member of the cab association. It is not incumbent upon him to search the record to determine who is the exact owner at this time and, in this case, any evidence of a transfer of title of this cab occurred apparently only the day before

■ We shall first consider the propriety of this charge with respect to American. We held in Callas v. Independent Taxi Owners' Association, 1933, 62 App.D.C. 212, 66 F.2d 192, that a taxicab bearing the peculiar colors and trade name of a cab association is presumed, when involved in an accident, to have been in the custody of, and engaged in the business of, that association; and that the presumption is enough to take the case to the jury. We also held in the Callas case, however, that the presumption is rebuttable, saying, 62 App.D.C. at page 214, 66 F.2d at page 194, "Whether the effect of this presumption was overcome by the testimony of the president of the company that it did not own a cab, and his intimations that it was not in the cab business was a question of fact for the jury, and consequently its decision as a question of law by the court was error."

■ In the later case of Simon v. City Cab Co., Inc., 1935, 64 App.D.C. 364, 78 F.2d 506, certiorari denied 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455, we referred to the rule announced in the Callas case that where the plaintiff is injured by a taxicab bearing the name of the owner the presumption arises that the vehicle was in the custody and on the business of the defendant owner and that the driver was the owner's agent acting within the scope of his employment, and added, 64 App.D.C. at page 365, 78 F.2d at page 507: " * * * This presumption, if standing alone, is sufficient to establish a prima facie case, and if uncontradicted, to carry the case to the jury."

We further held in the Simon case that, whenever the presumption is overcome by uncontradicted proof, a motion for a directed verdict should be granted; but that if the evidence is contradictory or reasonably subject to contradictory interpretations, the question of liability is one for the jury. The following is found in the Simon opinion, 64 App.D.C. at page 365, 78 F.2d at page 507: " * * * defendant admits

the ownership of the taxicab, admits the employment and agency of Semmes, Sr., and proved conclusively, at the time of the accident, the car was in the possession of Semmes, Jr., a total stranger to defendant, who possessed no authority, express or implied, to operate the car for the defendant or to use it in carrying on its business; and whose prior and instant use of the cab was without its knowledge or consent. Indeed, these facts stand uncontradicted, and to submit the issue to the jury of whether or not they are sufficient to overcome the presumption establishing a prima facie case, would be to submit the rights of the defendant to the speculation and sympathy of the jury."

To the same effect is Rosenberg v. Murray, 1940, 73 App.D.C. 67, 116 F.2d 552.

■ Here the uncontradicted evidence showed conclusively that at the time of the accident the car was in the possession of Nolan, a total stranger to American Cab Association, who had no authority, express or implied, to operate it in the name or under the colors of the Association, and whose use of the cab bearing that name and those colors was without its knowledge or consent. Nor, as we point out below, was there any evidence of reliance by the injured passenger upon the name or colors of the defendant Association. We conclude, under our rulings in the Callas and Simon cases, the trial court erred in not directing a verdict in favor of American Cab Association.

We are not dissuaded from that conclusion by the appellee's citation of Rhone v. Try Me Cab Company, 1933, 62 App.D.C. 201, 65 F.2d 834, where this court held the cab association was estopped, under the circumstances there disclosed, to deny liability for damages negligently inflicted by the driver of a cab carrying its colors. The driver of the cab in the Rhone case was undisputedly the agent of the owner, who in turn was a member of the defendant cab as-

this trip was undertaken so, if you find that Nolan failed to exercise the highest degree of care for the safety of Mrs. Olyowski and, as a result, this collision occurred and she was injured, then she

is entitled to a verdict against all three of what we will call the cab defendants, Philip Marchetti, Anthony J. Nolan and the American Cab Association."

sociation; and the proof was that, induced by its advertisements, the plaintiff called the association for service, which responded by sending a cab bearing its insignia. The plaintiff in that case relied, and had a right to rely, upon the Try Me Cab Company. But here Mrs. Olyowski made her contract with Nolan when he was using a Diamond cab and of course did not know he would appear for the trip in a cab marked "American Cab Association". She did not testify that she relied on the American name, but said she "didn't know who owned it" when she entered the cab. Moreover, unlike the situation in the Rhone case, Nolan was wholly unauthorized as far as American Cab Association was concerned.

■ With respect to Marchetti, the District Court was correct in directing a verdict against him if one were found against Nolan. In disregard of the rules of the Public Utilities Commission, and without notifying American Cab Association, he turned over to Nolan the taxicab bearing the colors of the Association of which Nolan was not a member and bearing also the insurance sticker issued in Marchetti's name. He thus made it possible for Nolan to operate the taxicab in an unauthorized and illegal manner and, because of his own reckless disregard of legal requirements, he constructively permitted and authorized Nolan to operate the taxicab in his name. Under the rule of Rhone v. Try Me Cab Company, supra, he is estopped to deny liability for the damages negligently inflicted by Nolan.

Affirmed as to Marchetti and reversed as to American Cab Association.